IN THE MATTER OF THE ASSIGNMENT FOR THE BENE-
FIT OF CREDITORS OF TRYLON RADIO LABORA-
TORIES, INC., A CORPORATION OF THE STATE OF
NEW JERSEY, ASSIGNOR, v. A. DAVID EPSTEIN,
ASSIGNEE.

Burlington County Court
Probate Division, New Jersey

Decided September 14, 1962.

*Messrs. Raff, Sherman & Scheider (Mr. Roy E. Scheider* appearing), attorney for A. David Epstein, assignee.

*Mr. David M. Satz, Jr.,* United States Attorney (*Mr. Alfred Abbotts,* Assistant United States Attorney appearing), attorney for the United States of America.

WOOD, A. C., J. C. C.   This matter is before the court upon first and final accounting by A. David Epstein, Esq., as assignee for the benefit of creditors of Trylon Radio Laboratories Inc., a New Jersey corporation, together with application for the allowance to Mr. Epstein of commissions as assignee in the sum of $7,500 and for the allowance to his attorneys, Messrs. Raff, Sherman & Scheider, for an attorney's fee of $7,500.

The account shows a balance in the hands of the assignee, as of March 28, 1962, the date of the accounting, of $37,393.06.  A "supplemental accounting," dated June 28, 1962 and filed on the date of hearing, shows additional disbursements by the assignee in the sum of $554.29, leaving a balance presently in his hands of $36,838.77.

Against said assets the United States of America holds a priority claim of $66,634.67, and one Sadie C. Slatko holds a priority claim in the sum of $85. Mrs. Slatko did not appear at the hearing.

The United States of America has filed exceptions to the applications for allowance of assignee's commissions and attorney's fees upon the following grounds:

1. As to the application for commissions to the assignee, the commissions requested are excessive and not justified by the work performed.

2. As to the application for attorneys' fees:

(a) Although the assignment is dated March 18, 1960 and was recorded in the county clerk's office on March 21, 1960, and a certified copy thereof filed in the surrogate's office on the same day, *N. J. S.* 2A:19–7, an order of this court authorizing retention of counsel by the assignee was not entered until November 10, 1960, and therefore the attorneys are not entitled to compensation for services rendered prior to that date.

(b) In any event, the requested fee of $7,500 is excessive, the estate having been relatively uncomplicated and little if any need for the services of the attorneys having been shown.

*I. The Attorneys' Fees*

The question of paramount importance raised by these exceptions is whether the attorneys for the assignee are entitled to any fee for their services and, if so, to what extent.

As noted above, the assignment to Mr. Epstein is dated March 18, 1960. It was recorded and filed on March 21, 1960. Just when Messrs. Raff, Sherman & Scheider were retained by the assignee is not clear, but it appears that such retention was effected about the same time as such recording and filing.

However, no order of this court authorizing such retention of attorneys by the assignee was entered until November 10, 1960.

*R. R.* 4:68–4 provides:

"No receiver shall employ an attorney, counsel or accountant except upon the order of the court supported by an affidavit of the receiver setting forth the necessity for the employment. The court before authorizing the employment of an attorney, counsel or accountant, shall be satisfied that he is not interested in the suit, or in any of the parties thereto, in such a way as to disqualify him from serving in good faith the receiver as a fiduciary for all of the stockholders and unsecured creditors of the corporation, or the unsecured creditors of the partnership or individual."

The quoted rule is applicable to assignment proceedings both in the Superior Court and in the Probate Division of the County Court. *R. R.* 4:69; *In re General Assignment for Benefit of Creditors of Xaviers, Inc.,* 66 *N. J. Super.* 561 (*App. Div.* 1961).

Although it is said that, prior to the court's decision in *Xaviers, supra, R. R.* 4:68–4 had been widely disregarded, counsel appear to have belatedly awakened to the existence and the mandatory language of the rule, and on November 10, 1960 there was presented *ex parte* to the court a so-called "Petition for Retention of Counsel, *Nunc Pro Tunc*," and on the same day an order of this court was entered which provided

"* * * that the said Assignee be and he is hereby authorized to employ and retain the firm of Raff, Sherman & Scheider as his Attorneys and Counsel herein in litigation and other kindred matters *as of the 18th day of March, 1960.*" (Emphasis supplied)

It is to the effect to be given to this order that attention must first be directed.

The United States contends that, despite the wording of the order, it is not and cannot be effective under the rules except to authorize retention of counsel after its date, and that the attorneys cannot be compensated for work performed prior to the date of the order.

The receiver's attorneys, on the other hand, contend that the order is effective and gives the receiver the right to employ them *nunc pro tunc.*

■ Preliminarily, the attorneys challenge the right of the United States to "attack collaterally" the order of November 10, 1960. They advert to *R. R.* 4:62–2 and maintain that the United States may not "challenge" the order of the court except in the precise manner set forth in that rule. I consider these contentions to be without merit.

*R. R.* 4:62–2 prescribes the means whereby a party may be "relieved" from a *final* judgment, order or proceeding, for certain reasons and within a reasonable time. The argument made here may be disposed of by pointing out that the order in question is not a "final order." No rights are adjudicated by it in any manner whatever. Indeed, the order does not require the assignee to retain counsel, but merely authorizes him to do so.

Moreover, this is not a "collateral attack" on the order, any more than a dispute in the Probate Division over the fee to be awarded to a guardian *ad litem* would be a collateral attack on the order appointing him; or any more than a contested application for distribution under a will is a collateral attack on the will itself. Having authorized the assignee to retain counsel, the court must, subject to the circumscriptions imposed by the statutes and the rules, determine the fee to be allowed for his services. In making any allowance of compensation, the court must necessarily determine not only whether the attorney performed services but whether he was acting with proper authority. This may—and in this case does—necessitate an examination of the order under which the attorney was acting, to determine its meaning and scope. Obviously the order must be examined in the light of the applicable statutes and rules. Such an examination is by no stretch of the imagination a "collateral attack" on the order.

I proceed, then, to the order of November 10, 1960:

■ By its terms, the assignee was given leave to appoint and retain his present attorneys in litigation and other kindred matters *as of March 18, 1960.* The italicized

language, it is said, cures the omission to secure an order in advance of the retention of counsel. I find myself unable to agree.

*R. R.* 4:68–4, quoted above, provides that an attorney may not be employed "except upon the order of the court." It goes on to provide further that the court *"before* authorizing the employment" shall be satisfied that certain conditions have been met—particularly that the attorney employed has no interest in the matter adverse to that of the receiver (or assignee).

In this case we are dealing with an application for the allowance of an attorney's fee for services, a substantial portion of which was admittedly performed without any *prior* authorization of the court for the retention of counsel and without any opportunity on the part of the court to be satisfied, *in advance,* of the absence of conflict of interest as required by the rule.

The opinion of the court in *In re General Assignment for Benefit of Creditors of Xaviers, Inc., supra,* is dispositive, and is binding on this court. Dealing with the question of the necessity of prior leave to retain counsel, the court quoted *R. R.* 4:68–6, which provides:

"*Unless* a receiver applies for, and, *until* he obtains leave to employ an attorney, the plaintiff's attorney may proceed with the conduct of the cause; but *except* where the latter is appointed by the court attorney or counsel for the receiver, he shall not be allowed by the court any compensation for his services." (Emphasis supplied)

The court went on to say, at *pages* 571, 572:

"We reiterate that this requirement, made applicable to assignment proceedings by *R. R.* 4:69, is mandatory in every respect. The court may not make an after-the-fact determination of whether the attorney's services were necessary and whether his employment met the criteria of *R. R.* 4:68–4. Not only would such a determination be difficult to arrive at after the estate has been settled, but the very policy of preventing the draining of the estate by the duplication of professional talent would almost inevitably be

eroded. To determine that counsel's services are not necessary in the first instance is one thing; to deny counsel compensation for work already performed is another. We conclude that the failure to obtain the prior appointment must result, as here, in absolute rejection of the attorneys' application for compensation."

Counsel for the assignee here attempt to distinguish *Xaviers* by pointing out that in that case there was no order for appointment of counsel, whereas here a *nunc pro tunc* order was entered. But in so doing, counsel would have the court sanction the very erosion of policy which is decried by the above-quoted language of *Xaviers*. Under the holding in that case, the prior authorization to retain counsel is mandatory and is an absolute prerequisite to the allowance of compensation for services. The rule means just what it says. The order of November 10, 1960, insofar as it authorized employment of counsel *nunc pro tunc,* violated the rule and must be held to be ineffective.

It should be added that this court, at the time of the entry of its order, did not have the benefit of the opinion of the court in *Xaviers, supra.* This can, however, make no difference. The prior general practice of honoring *R. R.* 4:68–4 more in the breach than the observance was thoroughly dealt with in *Xaviers, supra,* and the court still was constrained to deny compensation to counsel. That reasoning must apply here. The maxim *"Ignorantia legis neminem excusat"* is particularly applicable to able and competent attorneys acting as fiduciaries and the advisers of fiduciaries.

I hold that counsel for the assignee are not entitled to any compensation for services rendered prior to November 10, 1960.

■ We come, then, to the amount of the fee to be allowed to the attorneys. At the hearing on the allowance of the account, I noted that the statement of counsel's services annexed to their petition for allowances contained no information as to dates on which services were performed, and I requested of counsel an additional statement

as to services performed before and after November 10, 1960. Such a statement has not been supplied. Nevertheless, I have carefully perused the aforesaid statement, which appears to set forth a chronological, albeit highly generalized, narrative of counsel's activities in connection with the estate. It is said in the reply brief filed on behalf of the United States that the assignee's attorneys have admitted "by letter" that the statement is chronological. The Government appears to acknowledge this, and, since nothing to the contrary appears, I shall assume that this is so.

The attorneys' statement covers six pages. In the middle of page 5 is the entry:

"Prepared Petition and Order for Counsel Nunc Pro Tunc which was subsequently executed and filed."

In the subsequent page and a half there is set forth a congeries of routine matters all of which, as the Government's reply brief well states, are matters normally handled by an assignee and are completely non-litigative in nature. I agree with counsel for the Government that the attorneys for the receiver are entitled to and should be awarded only a fee for services in connection with the preparation of the complaint and account and affidavit of claims in this proceeding, the filing of same with the surrogate, and their appearance in court on this accounting. These are the only services which can be said to have been rendered after November 10, 1960 which were (in the language of the order) "in litigation and other kindred matters." Indeed, an examination of the affidavit and account raises the question whether there was any real need for the retention of counsel at all. *In re Assignment for the Benefit of Creditors of Munson-Lied Co.,* 68 *N. J. Super.* 281 (*App. Div.* 1961); *In re General Assignment for the Benefit of Creditors of Shay,* 75 *N. J. Super.* 421 (*App. Div.* 1962).

The court in *In re Assignment for the Benefit of Creditors of Munson-Lied Co., supra,* commented adversely on the

practice of the transfer by assignees to appointed counsel of many "strictly legal but non-litigative services which might otherwise have been performed by the assignee, if acting alone." The court said further (68 *N. J. Super.*, at *p.* 290):

"This is a practice to be discouraged, and, in case of manifest abuse, the attorney's appointment may well be vitiated and his request for compensation denied entirely by the reviewing court."

However, since the services performed after November 10, 1960 were rendered under color of a court order, and since the Government does not dispute the fact of performance or object to the allowance of a reasonable fee, I shall be guided accordingly. There will be allowed to Messrs. Raff, Sherman & Scheider as attorneys for the receiver a fee of $750 which, in my opinion, is liberal for the litigative and "kindred" services rendered after November 10, 1960.

*II. The Assignee's Commission*

As to the commission to be awarded to the assignee, I have re-examined the assignee's disbursements set forth in the account in the light of the rules laid down by the opinion of the Appellate Division in *In re General Assignment for the Benefit of Creditors of Shay, supra,* and I find that when so examined the $7,500 requested, together with allowances as defined by that case, falls within the 20% limitation imposed by *N. J. S.* 2A:19–43. However, this need not concern me, for I am constrained to conclude that, quite apart from the statutory limitation, the commission requested is excessive and must be reduced.

The assignee has furnished no detailed affidavit or statement of his pains, trouble and risk. His statement, annexed to and forming part of his verified complaint and account, is so brief and generalized that it is essentially uninformative as to the time spent and work performed on this assignment. Moreover, examination of this statement together with that of the attorneys, reveals that, to paraphrase the language of *In re Assignment for the Benefit of Creditors of Munson-Lied Co., supra,* at *page* 290, many of the strictly

legal but non-litigative services which might otherwise have been performed by the assignee were transferred onto the shoulders of the attorneys; and this, as I have previously concluded, was largely without the sanction of a prior court order.

The matter appears to have been quite routine, as these matters go. The assignee is himself an attorney of repute and of known skill and expertise in the handling of such matters as this. I must, therefore, recognize the narrowing of the assignee's activities produced by his employment of counsel and limit his compensation accordingly.

*R. R.* 4:68–5 requires the court, in making allowances to receivers (and hence to assignees, *R. R.* 4:69) to consider "the extent and value of the actual services rendered and the pains, trouble and risk incurred by them in the discharge of their duties relative to the conduct and settlement of the receivership" (or assignment). The better practice, it seems to me, would be for the assignee to file an affidavit such as that required of fiduciaries under *R. R.* 4:107–1, setting forth *fully* his pains, trouble and risk in administering the estate.

Nevertheless, the account itself and the statements before me do indicate considerable work on the part of the assignee. He himself, at oral argument, stated that he spent "more than 200 hours" on this estate. He is an attorney of high standing and repute and I have full confidence in the correctness of his representation. Having regard to the size of the estate, the responsibility involved and the time spent in reviewing many claims and in performing his duties generally, I consider the sum of $4,000 to be fair compensation to the assignee for his services.

Judgment will be entered allowing the account, with compensation to the assignee and his attorneys in accordance with these conclusions.